## 11037

### KILLINGSWORTH v. STATE EXECUTIVE COM. DEMOCRATIC PARTY.

#### (118 S. E., 822) ·

1. ELECTION.—SECRECY OF BALLOT HELD NOT DESTROYED BY FAILURE TO DETACH NUMBERED COUPONS.—Where 59 ballots cast at a particular box did not have detached from them the official numbered coupons, and·were numbered from 1 to 45, except 23, and from 119 to 133 establishing that they had not been given out *seriatim.* to voters as named and numbered on the polling lists, *held,* 'that the secrecy of the ballot had not been destroyed so as to warrant disregarding ballots.

2. ELECTIONS—RULES OF 'PRIMARY ELECTIONS DIRECTORY, NOT MANDATORY.—The rules of primary elections, consisting in part of party rules and in part of statutes, are directory and not mandatory, so that a failure to comply with them is not fatal, unless the error is shown to be prejudicial or liable to produce prejudice.

Original proceedings *in certiorari* by R. G. Killingsworth against the State Executive Committee of the Democratic Party and others. Petition dismissed.

Mr. J. Fraser Lyon, for petitioner.

Mr. T. M. Ross, for respondents.

October 18, 1922.

*Per Curiam.* This is a proceeding in the original juris-

diction of this Court.   The proceedings are *in certiorari.*
The petition is as follows:

"1. That under the statutes and rules of the Democratic
party your petitioner, R. G. Killingsworth, and the re-
spondent, T. M. Ross, were duly qualified candidates in
the first primary election held in McCormick County, State
aforesaid, on Tuesday the 29th of August, 1922, for the
purpose of nominating a Democratic candidate for member
of the House of Representatives from McCormick County;
that the names of your petitioner and the above-named re-
spondent, T. M. Ross, were duly printed on the ballots or
tickets, and they were voted for in said election.

"2. That the ballots cast in said election were canvassed
by the McCormick County Executive Committee, which
declared that your petitioner, R. G. Killingsworth, had re-
ceived 505 votes and that the respondent R. M. Ross had
received 508 votes, notwithstanding the protest and ob-
jection of this petitioner to the election as held at the Wil-
lington box in said County, which will be hereinafter spe-
cifically stated.

".3. That your petitioner gave due notice to the Democratic
Executive Committee of McCormick County and T. M. Ross
of his protest in writing as follows:

"You will please take notice, that R. G. Killingsworth, a
candidate for the House of Representatives from McCor-
mick County, S. C., will contest and hereby protests against
the counting of the votes cast in the first primary election
held on Tuesday the 29th day of August, 1922, for the pur-
pose of nominating a representative in the Legislatiure of
South Carolina from McCormick county, S. C., in so far
as the Willington club is concerned, and asks that the votes
cast in said election at the Willington club be not counted,
and that the said R. G. Killingsworth be declared the nomi-
nee of the party in said election upon the following grounds:

"(1) The election laws of the State of South Carolina,
and the rules of the Democratic party for McCormick County

and of South Carolina were not complied with and openly violated in the following respect, to wit: (a) The manager of election at the Willington club failed to observe the rules of the party and the laws of the State of South Carolina by failing to keep a proper poll list; (b) by not furnishing to voters tickets with numbers printed thereon *in seriatim* order; (c) by failing to detach from the ballot the coupon with the name of the club and the number printed thereon.

"(2) The petitioner would further show that on account of such gross irregularities as stated above all of said votes cast at the Willington club in said election should be set aside and not counted, and should this be done petitioner would have a majority of the votes regularly cast in said election throughout the county, and therefore should be declared elected, or the nominee of the party in said election.

"Wherefore, petitioner prays that this honorable committee declare the gross irregularities in the said election at the Willington club sufficient to warrant throwing out said box and that your honorable committee declare petitioner nominated or elected in said election.

"4. That the said McCormick County Executive Committee met on September 2, 1922, for the purpose, among other things, of acting upon and deciding the protest of your petitioner; that the following is a copy of the minutes, action and order of the said McCormick County Executive Committee:

"McCormick County Executive Committee met at the courthouse at McCormick at 3 p. m. o'clock for the purpose of passing on protest filed by R. G. Killingsworth, candidate for election to House of Representives.

"The following members were present: W. K. Charles, chairman, W. T. Strom, W. E. Sheppard, J. H. Lyon, T. J. Lyon, Joe J. Link, Jas. M. Gilbert, J. P. Brunson, Robert S. Owens.

"It was agreed by Dr. R. G. Killingsworth and T. M. Ross that protest of R. G. Killingsworth be passed on by members of the committee present.

"Committeeman Robert S. Owens announced that he would not participate in the voting of the committee on protest of R. G. Killingsworth, on account of his association with candidate T. M. Ross, who is the respondent.

"Joseph Murray, Esq., representing R. G. Killingsworth, read the petition or portest. It was admitted that the coupons on tickets or ballots voted at Willington box were not detached.

"It was admitted that there were 59 names on the poll list and that there were 59 votes cast, but that the ballots were not given out to the voters *ad seriatim*.

"Poll list and ballots offered in evidence.

"Arguments were made by Joseph Murray and T. M. Ross.

Moved by James M. Gilbert that the protest of R. G. Killingsworth with reference to Willington box be dismissed, and that T. M. Ross be declared the nominee for House of Representatives. Motion seconded by W. T. Strom, and carried by a vote of 6 in favor of the motion to 1 against.

"Minutes approved. Meeting adjourned.

"5. That thereafter your petitioner appealed to the State Executive Committee of the Democratic Party for the State of South Carolina, and, after considering the evidence and hearing the arguments the said State Executive Committee affirmed the action of the McCormick County Executive Committee and declared T. M. Ross, the respondent, the duly nominated candidate of the party for membership in the House of Representatives of the State of South Carolina.

"6. That the election held at the Willington box in said County was null and void in that the managers of said box failed to detach from any of the ballots the coupon with the name of the club and the number printed thereon, and that the secrecy of the ballot at said box was thereby destroyed, contrary to the statute in such cases made and provided, and contrary to rule 29 of the Democratic party of South Carolina, which in part provides as follows: 'The secrecy of the ballot shall be preserved at all times.'

"7. That the managers of said election at the Willington box failed to observe the rules of the party and the statute of the State by failing to keep a proper poll list, in that in many instances the numbers on the poll list did not correspond with the numbers on the coupons on the ballots.

"8. That the managers of said election at the Willington box violated the rules of the Democratic party and the statute of the State by not furnishing to voters tickets with numbers printed thereon in *seriatim* order.

"9. That 59 ballots were cast at the Willington box of which number your petitioner received 18 and the respondent, T. M. Ross, received 41; that if all of said ballots were thrown out as being in violation of the statutes and the rules of the Democratic party that the result of the said election will be changed by giving to your petitioner a majority of 16 votes in said election in said County, and in his thereby being declared the nominee of the party.

"10. That your petitioner asks that this honorable Court take jurisdiction of this proceeding, for the reason that, if he is compelled to apply to a judge of the Circuit Court for the desired relief that any decision that might be rendered by said Court woudl be subject to appeal to this honorable Court, and that if such appeal should be taken that a final decision could not be had in the matter in time to have the proper name of the nominee of the Democratic party printed on the ballots for the general election in November.

"Wherefore, your petitioner prays that the entire record relating to said election and the findings of the State Executice Committee of the Democratic party of South Carolina may be transmitted to this Court, to the end that the same may be examined and considered, that the said election at the Willington box may be set aside, declared null and void, and that the declaration and decision of the State Executive Committee of the Democratic party of South Carolina may be reversed, and that your petitioner be declared the nominee of the Democratic party for member of the House of Representatives.

"J. Fraser Lyon, Attorney for Petitioner."

The names of the voters were taken down and numbered apparently in the order in which they voted. The official numbered coupons were not detached. In the box were found ballots from No. 1 to No. 45, except ballot No. 23. The Nos. 119 to 133 were also found in the box. It is claimed that the secrecy of the ballot was destroyed because, when the number on the list of the voters was compared with number on the ballot, it was manifest how the voter voted. This position is untenable. That the voting by numbers, *seriatim,* was not observed is manifest. If the numbers on the ballots had been from No. 1 to No. 59 it would have been clear, but they were not. The numbers were in confusion and out of order. For all that appears the vote numbered 133 may have been the first vote cast. The managers may have started at the bottom.

The rules of the primary elections (part in the rules of the party and part in the statutes) are elaborate and minute in detail, and comprise regulations for the size of the booths, the length of the curtain that screens the booth, the distance of the rail from the ballot box, etc. It will not be contended that a few inches one way or the other in these matters would vitiate an election. If these rules and regulations are held to be mandatory, and a variation from any one of them fatal to an election, it would be almost impossible to hold a valid election. They must be held to be directory, and in order for a failure to comply with them to be fatal it must be shown that the error was prejudicial or liable to produce prejudice. We have seen that there is noting in the record to show that the secrecy of the ballot was impaired.

There is in this case no question of want of good faith or fraud. The objection is to what, in this case, is a mere technical violation of the law.

It was within the province of the County and State committees to count the votes in this box, and the petition is dismissed.

CHIEF JUSTICE GARY, did not participate.